**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**THOMAS CHAMBERLAIN**

**VERSUS** **CIVIL ACTION NO. 1:11cv2-LG-RHW**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g) of the Social Security Act, Thomas Chamberlain seeks judicial review of the final decision of the Commissioner of Social Security (Commissioner) finding Chamberlain failed to establish he is disabled for purposes of Social Security disability benefits and supplemental security income. The case is before the Court on [10] Chamberlain's one-sentence motion to reverse the decision or remand for further proceedings on grounds that the Commissioner's decision is unsupported by substantial evidence. In his memorandum [11], Chamberlain claims the Commission erred because (1) the Administrative Law Judge (ALJ) failed to consider the entire record; (2) the decision rejects the findings of Chamberlain's treating chiropractor based on a misconception that the chiropractor was not a treating or examining source; (3) no medical evidence from a treating or examining physician supports the finding that Chamberlain can perform a full range of sedentary work; (4) the ALJ failed to re-contact the treating physician and chiropractor before rejecting their findings; and (5) the decision states the treating physician was obliged to explain the basis for his opinion as to the severity of the limitations he found Chamberlain had.

On February 20, 2008, Thomas Chamberlain filed claims for supplemental security income (SSI) and disability insurance benefits. [9-1, pp. 120-123, pp. 124-126] The ALJ conducted a hearing on November 6, 2009 after Chamberlain's applications were denied by the

state agency. Chamberlain claims he is disabled due to "back problems, head injury due to chainsaw accident," and has not worked since June 1, 2007.[1] [9-1, p.139] Chamberlain alleges he cannot sit, stand, lift or lie down too long; that his back and head hurt all the time, and his ankles swell and hurt all the time. He states he cut trees for a living, and that he cut his head above his left eye down through his lip which "caused a bad whiplash" to his head. [9-1, p. 139] On his application, he identified VA medical centers in Tampa, Florida and Biloxi, Mississippi as having provided him treatment/medications. [9-1, pp. 141-142]

Born in 1961, Chamberlain completed a GED in 1979. He has no special job training, trade or vocational school [9-1, p. 143], and his work history consists of self-employment in the lawn and tree business from January 1987 until December 1997, and employment ("on and off") with Rite Guys Tree Service as a tree-cutter from January 2003 or 2004 until June 2007. [9-1, pp. 140, 145] Chamberlain described his duties on the self-employed job as "ride mower, trim bushes and trees, pull weeds," and on the Rite Guys job as "run rope, drive bobcat, chip brush." [9-1, pp 146-47]

At age 10, Chamberlain broke his leg in a bicycle accident, and when he was 17 years old, he broke his ankles and injured his knees in an automobile accident. He lists other injuries as a broken hand, and a finger crushed with a Bobcat. In September 2006, Chamberlain was using a chain saw when it bounced back and hit him in the face. He was hospitalized briefly for injuries sustained in this accident, and claims he still has problems from it including dizziness, headaches and constant neck pain. He claims has had constant pain in his ankles since the 1978

[1] In his hearing testimony, Chamberlain testified he quit work in 2006 [9-1, p. 70], but a memorandum prepared by his attorney states he last worked in 2007, and provides an alleged disability onset of October 27, 2007. [9-2, p. 25]

auto accident, which has worsened with age, and that his knee injury left him unable to run by age 22 which required him to leave the Army after one and one-half years. He states his worst problems are his back and neck pain, which is worse with sitting, and he cannot sleep due to pain. [9-1, pp. 69-75, 84] For the past ten years, he claims he has suffered daily pain rated between 7-10 (0 being lowest, 10 highest). [9-1, p. 78-9] He takes medication, but claims it just "takes the edge off" and does not really help, and he denies his medications control his arthritis and back pain despite notes to that effect in his VA records. [9-1, p. 78] Chamberlain testified no physician has recommended any surgery for his complaints, and said he sees Dr. Bonhomme (of the Biloxi VA), who treats his neck, every couple of months. [9-1, p. 75]

Chamberlain testified he previously had problems with alcohol and cocaine abuse, and his doctors do not want him taking addicting medications and recommend instead that he use heating pads, elevate his legs, *etc*. [9-1, pp. 80–83, 78] Chamberlain testified at the 2009 hearing that his drinking never caused him to miss or be late for work, and that he had quit drinking about four years ago, and quit using cocaine five years ago.[2] [9-1, pp. 81-82] The ALJ accepted Chamberlain's testimony to the extent that his medical records did not indicate alcohol or drug abuse since 2007, and determined Chamberlain's substance abuse "is no longer a medically determinable impairment." [9-1, p. 22]

Chamberlain is divorced and lives with his mother. He is able to tend to his own personal needs, make his bed and do laundry, but states physical activity makes his back, neck, ankle and knee pain worse. [9-1, pp. 84] He also takes out the trash, cuts the grass and fixes minor things

---

[2]Chamberlain's VA records dated November 29, 2007 indicate he was still drinking 18 beers a day, had used crack cocaine the prior weekend, and that he had lost a job due to alcohol related tardiness. [9-2, pp. 56-57], [9-3, p.2]

as needed around the house, and goes shopping about once a week. [9-3, p. 4]  He testified he sometimes stays in bed all day (1-2 days a week); that he can stand or sit for only 10-15 minutes at a time, and can lift 15-20 pounds. [9-1, pp. 84, 79]  His daily activity consists of talking with his mother, watching television and playing with the dog. [9-1, pp. 68, 76, 84]

      Chamberlain discusses his first two assignments of error together, claiming that two sentences from the Administrative Law Judge's 10-page decision make it "obvious that the ALJ did not examine [Dr. Davis's records] in making his decision," and a decision based on less than the entirety of the evidence cannot constitute a fair hearing.  The Court first notes that the ALJ expressly states his decision was made, "After careful consideration of *all the evidence*..." [9-1, p. 19, ¶ 4] (emphasis added)  The ALJ also states Chamberlain "was seen at the Davis Chiropractic Clinic and on August 10, 2007, full spine x-rays were taken which revealed degenerative disc disease in the lumbar spine with fact (*sic*) arthrosis at L4-L5, and spondylolytic anterolisthesis at the L5 level." [9-1, p. 24, ¶ 6]  These facts come directly from Dr. Davis's records. [9-5, p. 8]  While it does appear that the ALJ misspoke when he stated Dr. Davis "does not appear in treating records," and that "there is no proof that the chiropractor is even an examining source, much less treating source," [9-1, p. 26], the very next paragraph of the ALJ's decision is devoted entirely to his analysis of Dr. Davis's evidence:

> Brian Davis, D.C., completed a Symptoms/Sign Form on March 4, 2009.  His responses were the same as Dr. Bonhomme's, except he indicated that the claimant had weakness in his hands, but no arthritis.  Given the treatment notes of Dr. Davis, the limitations he opines seem out of proportion.  Although a chiropractor and thus entitled to deference pursuant to SSR 06-03, Dr. Davis is not relieved of the obligation to explain why he opines limitations as severe as those he opines.  He is also required to base his opinion on demonstrable findings rather than on the claimant's report.  There is no indication that he did.  The undersigned does not accord this opinion very much weight as it is inconsistent with other evidence and is not supported by his treatment records.  I do not ignore

it but consider it as part of the entirety of the medical evidence. It is given deference only to the extent of its consistency to the residual functional capacity.

The administrative record does not support Chamberlain's contentions that the ALJ failed to consider all evidence in the case, or rejected Dr. Davis's findings based on a misconception that Dr. Davis was not a treating or examining source. The ALJ stated why he was discounting Davis's report, and his decision is supported by substantial evidence. Dr. Davis's records consist of 12 pages in the 855-page record, only three of which actually reflect examination/treatment by Dr. Davis, with two additional pages devoted to the August 10, 2007 radiological report. [9-5, pp. 2, 6, 13, 8-9]. The records indicate Dr. Davis saw Chamberlain five times in 2007 (twice in April, once in May, July and December), three times in 2008 (in January, February and May), and three times in 2009 (in January, March and June). Davis's records state Chamberlain's work was as a "tree climber x 35 years," which is contradicted by Chamberlain's November 2009 testimony that he mainly cut grass when he was self-employed, and that for the last seven to eight years most of his work was on the ground, not climbing trees. [9-5, p. 13], [9-1, p. 73] In light of the somewhat limited and sporadic contact Dr. Davis had with Chamberlain, the ALJ's conclusion that Dr. Davis's treatment notes seem "out of proportion" with the opinions stated on his March 4, 2009 symptoms/signs form [9-3, pp. 113-114], does appear to be supported by substantial evidence.

The ALJ had before him voluminous VA records of Chamberlain's treatment for various complaints over a number of years. The VA records from Tampa, FL reflect treatment for complaints dating back to 2005 and involve alcohol and substance abuse [9-2, pp. 48-49, 56-62, 63-71, 73-77], bronchitis, otitis and sinusitis [9-2, pp. 48-49, 85-89, 107-107, 108-111], headaches [9-2, pp. 85-89], esophageal reflux disorder and gastritis. [9-2, pp. 113] On

September 14, 2006, Chamberlain complained of low back pain with dizziness and vomiting, and the noted impression was that this was a urinary tract infection. [9-2, pp. 98-99]  Five days later, on September 19, 2006, he complained of urinary pain without back pain, and was diagnosed with dysuria. [9-2, pp. 49, 91, 94]   The Tampa VA records through November 2007 otherwise show back pain only by history. [9-2, pp. 48-271]

The records of Chamberlain's first treatment at the Biloxi VA cover a period from March through July 2007.  [9-2, pp. 118-188]  During that time he presented with complaints of headache and tobacco use disorder in March; chronic abdominal (stomach) pain, chronic sinusitis and headaches in May,  [9-2, pp. 164-68, 171]; "unspecified" backache, gastritis and dyspepsia in June [9-2, p. 118, 148, 156-162]; and gastritis and chronic low back pain in July, both of which Dr. Bonhomme noted were well controlled on medications.  [9-2, pp. 143-145, 148, 178, 180-81], [9-3, p. 92]  In May, Chamberlain was noted to have no joint pain, stiffness or muscle spasms, and in July he had no tenderness in the lumbar back, negative straight leg lift, and full range of motion in his neck.  [9-2, pp. 164-68, 144-145, 150]  These records show Chamberlain was still drinking during this period, actually appeared to be inebriated at one of his visits, and he stated he had lost his drivers license because he had received eight DWIs.  [9-2, pp. 156-161] Chamberlain was treated four times over 15 months from June 2006 until September 25, 2007 at Moss Chiropractic Clinic for complaints of hip, neck and lumbar pain, spasms and tenderness. [9-2, pp. 195-196]

As with his first Biloxi VA records, Chamberlain's Biloxi VA records for 2008-2009 reflect complaints/diagnoses of headaches, gastric/abdominal problems, kidney stones, sinusitis, bronchitis, and ear infections, and add new complaints [9-3, pp. 28-33] of eye problems and cysts

on his arms and scalp.  [9-3, pp. 28-111], [9-5, pp. 35-47]  Back pain again appears primarily as part of Chamberlain's history rather than as a presenting complaint, and the records note that his back pain is controlled on medication.  [9-3, pp. 58, 92, 181], [9-5, p. 88, 126]  The lumbar back is also often noted to be without tenderness, cramps or stiffness, and with negative straight leg lift.  [9-3, pp. 80, 84-85, 170], [9-5, p. 88, 113-114, 123, 126]  In June 2008, Chamberlain began inquiring about getting non-VA disability, and requesting a disability letter.  [9-3, pp. 180, 184]

At his annual examination on April 8, 2009, Chamberlain's chief complaint was allergies.  Examination on that date showed his lumbar back to be without tenderness, with negative straight leg lift, and his spinal arthritis was noted to be controlled with medication. [9-5, pp. 86-89]  Chamberlain did present with a complaint of low back pain on August 4, 2009, but examination of the lumbar back noted no tenderness and negative straight leg lift.  At that time, Dr. Bonhomme found Chamberlain "mildly limited due to pain in low back."  [9-5, pp. 66, 70]

Dr. Gerald Barrilleaux, Ph.D., examined Chamberlain on May 9, 2008 on referral by the Mississippi Disability Determination Service.  Dr. Barrilleaux found, from a psychological standpoint, that Chamberlain "shows impairment which would be expected to mildly interfere with his ability to perform work-related behaviors," and "would not be expected to significantly interfere with his relationships with co-workers, supervisors, and others."  [9-3, p. 6]  A residual functional capacity assessment dated June 6, 2008 rated Chamberlain's functional limitations as mild to moderate, and found him capable of understanding/carrying out instructions, maintaining concentration adequately for two hour periods in an eight hour workday, completing a normal work week without excessive interruptions from psychological symptoms, interacting appropriately with co-workers and supervisors on a limited basis, and adapting to a work setting.

[9-3, p. 29] Vocational expert Kelly Hutchins testified Chamberlain's past work as a tree pruner, including actually climbing up into trees and working off the ground, is a medium job with a skill level of four; ground level work as a tree cutter is considered heavy with a skill level of three; and general lawn care is listed as a medium level with a skill level of three. [9-1, pp. 87-88]

The Court finds no merit to Chamberlain's first two assignments of error. The record clearly shows the ALJ considered Dr. Davis's treatment records, and found the severity of his findings of limitations on his symptom/sign report both unsupported by his records, and contradicted by other medical evidence in the case. The same is true of the ALJ's rejection of Dr. Bonhomme's almost identical symptom/sign report – it was unsupported by objective medical evidence in Chamberlain's records and/or contradicted by other medical evidence in the case. Indeed, months after completing the report, Dr. Bonhomme, himself, found Chamberlain only "mildly limited due to pain in low back." [9-5, pp. 66, 70]

Applying the five-step sequential evaluation to the evidence presented in Chamberlain's case, the ALJ found Chamberlain had not engaged in any substantial gainful activity since his alleged onset of disability, that he had severe impairments of cervical disc disease[3] and chronic back pain but those conditions do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 4, Subpart P, Appendix 1. The ALJ found Chamberlain could not perform his past relevant work. However, applying the Medical Vocational Guidelines, the ALJ determined Chamberlain could perform a significant number of jobs existing in the national economy. Chamberlain challenges this finding as being based on no medical opinion by a treating or

[3]Radiologic studies show Chamberlain has paracentral disc protrusion at C5-C6 with apparent nerve root impingement. [9-4, p. 129], [9-5, p. 126]. The medical records generally mention neck problems only by way of history. [9-4, pp. 1, 30, 19, 77] , [9-5, pp. 60, 66, 106, 112, 126].

examining physician, and contends the ALJ improperly rejected the findings of Dr. Bonhomme, presumably the findings on the doctor's March 2009 symptom/sign report which the ALJ found unsupported by objective medical evidence in Chamberlain's records and/or inconsistent other medical evidence in the case. The ALJ noted the absence of diagnostic testing to explain the severity of the symptoms, that the medical records generally refer to Chamberlain's back pain only by history and examinations of his lumbar back consistently revealed lack of tenderness, negative straight leg lift and absence of spasms, stiffness, etc. Even Dr. Bonhomme consistently stated that Chamberlain's back pain was well controlled on medication. Indeed, after completing the symptom/sign report, Dr. Bonhomme, himself, found Chamberlain only "mildly limited due to pain in low back." [9-5, pp. 66, 70] These are reasonable and substantial reasons for refusing to give controlling weight to Dr. Bonhomme's opinion as to the severity of Chamberlain's symptoms. The ALJ can properly reject opinions of physicians when the evidence supports a contrary conclusion. *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981).

Contrary to Chamberlain's argument, the ALJ is not automatically required to recontact a doctor before rejecting his opinion. The ALJ seeks to obtain additional information when the evidence is consistent but insufficient for the ALJ to reach a conclusion as to whether a claimant is disabled. 20 C.F.R. § 404(c)(3). In this case, the ALJ found from substantial conflicting evidence that Chamberlain failed to prove his claimed disability. The burden of proving a disability rests on the one claiming a disability,[4] *i.e.*, that he is unable to engage in any substantial gainful activity due to physical or mental impairment(s) which can be expected to result in death

[4] 42 U.S.C. § 423 (d)(5); 20 C.F.R. § 416.912; *Masterson v. v. Barnhart*, 309 F. 3d 267, 271 (5th Cir. 2002); *Selders v. Sullivan*, 914 F. 2d 614, 618 (5th Cir. 1990); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir.1987).

or last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A), 20 C.F.R. § 404.1505(a). Where, as here, a disability claim is based on pain, the claimant must produce "objective medical evidence of a condition that could reasonably produce the level of pain alleged." *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989), *citing Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir.1985); 42 U.S.C. §423(d)(5)(A). Chamberlain has identified no treatment or examination records as being missing from the administrative record, nor has he shown that any evidence exists which might lead to a different result on remand. Instead, he contends the ALJ was required to accept Dr. Bonhomme's symptom/sign checklist and to give it controlling weight despite the fact that the doctor's records and other medical evidence fail to support the severity of the limitations noted on it. Chamberlain's contention that the Commissioner's decision cannot stand because it was not based on a treating doctor's statement is incorrect. The absence of a medical source statement about a claimant's ability to work "does not, in itself, make the record incomplete." See *Gutierrez v. Barnhart*, 2005 WL 1994289 (5th Cir. 2005)(quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) As in *Gutierrez*, the ALJ in this case clearly identified the inconsistencies within the medical records/testimony that supported his findings. The issue for the Court is whether the decision is supported by substantial evidence in the existing record. The Court finds, based upon the entire record, that the ALJ's opinion is supported by substantial evidence which the ALJ analyzed under the appropriate legal standard. It is therefore,

**ORDERED AND ADJUDGED**, that the decision of the Commission is affirmed.

**SO ORDERED AND ADJUDGED** this the 20th day of March, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE